IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAN PATRICIO TOALOMBO YANCHALIQUIN,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>PAMELA BONDI, Attorney General; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; IMMIGRATION AND CUSTOMS ENFORCEMENT; DAREN K. MARGOLIN, Director for Executive Office for Immigration Review; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; DAVID EASTERWOOD, Acting Director, St. Paul Field Office, Immigration and Customs Enforcement; and STEVE FANNON, or successor, Warden of McCook Detention Center,<br><br>　　　　　Respondents. | 8:25CV743<br><br><br>MEMORANDUM<br>AND ORDER |

　　　This is a petition for a writ of habeas corpus brought by petitioner Willian Patricio Toalombo Yanchaliquin ("Toalombo Yanchaliquin") under 28 U.S.C. § 2241. Toalombo Yanchaliquin challenges the lawfulness of his detention and seeks his release from custody (Filing No. 33). For the reasons explained below, the Court grants the petition in part and denies it in part.

I.   **BACKGROUND**[1]

A.   **Immigration Record**

Toalombo Yanchaliquin is a native and citizen of Ecuador who entered the United States without inspection on August 18, 2023.[2] He was not admitted or paroled into the country. On August 19, 2023, United States Customs and Border Protection served him a Form I-862, "Notice to Appear" ("NTA") which states he is "an alien present in the United States who has not been admitted or paroled" and is removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act of 1952 (the "INA"), 8 U.S.C. § 1182(a)(6)(A)(i). That NTA also ordered Toalombo Yanchaliquin "to appear before an immigration judge in Fort Snelling, Minnesota on September 5, 2024—more than a year after his initial arrest. He was then released from custody under a Form I-220A, "Order of Release on Recognizance."

When September 5, 2024, finally came, Toalombo Yanchaliquin did not appear for his court date. So, an immigration judge ordered him removed in absentia. However, on February 3, 2025, and on Toalombo Yanchaliquin's motion, the immigration court reopened his removal proceedings. He then applied for asylum using Form I-589 with the immigration court on February 18, 2025.[3]

---

[1] The federal respondents have supplied a sworn declaration by an immigration officer familiar with Toalombo Yanchaliquin's immigration case and some of the immigration forms from that case (Filing No. 38). The background facts (which are largely undisputed) are taken from those forms, declaration, and Toalombo Yanchaliquin's filings (Filing Nos. 33, 43).

[2] Toalombo Yanchaliquin originally claimed he entered in June (Filing Nos. 1, 33), but now he agrees with the government that he entered on August 18, 2023 (Filing No. 43).

[3] Federal respondents point out this application is likely untimely because it was submitted more than one year after Toalombo Yanchaliquin's entry. *See* 8 U.S.C. § 1158(a)(2)(B), (D) (requiring that an asylum application be filed within one year of an applicant's arrival in the United States unless the "alien demonstrates . . . either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within" one year).

Another year later, ICE officers detained Toalombo Yanchaliquin on December 14, 2025, in Minneapolis, Minnesota. They issued him another Form I-200, "Warrant of Arrest" signed by an immigration officer. That officer determined that there was reliable evidence that Toalombo Yanchaliquin "lacks immigration status or notwithstanding such status is removable[.]" ICE officers then transferred him to the Freeborn County Jail in Albert Lea, Minnesota. The next day, they transferred him to the Sarpy County Jail in Papillion, Nebraska. He clarifies he is currently detained at a detention center in McCook, Nebraska (Filing No. 42).

His initial appearance before the immigration judge in his current removal proceedings was set for February 4, 2026, in Omaha, Nebraska. He argues he is being held unlawfully and petitions this Court for release, or in the alternative, a bond hearing under 8 U.S.C. § 1226(a), pending those proceedings. *See* 28 U.S.C. § 2241.

**B.   Procedural Posture**

Toalombo Yanchaliquin originally filed this habeas petition on December 16, 2025, in the District of Minnesota (Filing No. 1) naming Pamela Bondi, Attorney General; the Department of Homeland Security ("DHS"); Kristi Noem, Secretary of DHS; ICE; Todd M. Lyons, Acting Director of ICE; the Executive Office of Immigration Review ("EOIR"); Daren K. Margolin, Director for EOIR; David Easterwood, Acting Director of the St. Paul Field Office for ICE (collectively, the "federal respondents"); and Ryan Shea, Sheriff of Freeborn County, Minnesota. *See* 28 U.S.C. § 2241.

After being transferred to the District of Nebraska, he amended his petition (Filing No. 33) to remove the sheriff and name his immediate physical custodian, Steve Fannon, Warden of McCook Detention Center (the "warden").

The Court then issued a show-cause order (Filing No. 35) ordering the warden to "certify the true cause of [Toalombo Yanchaliquin's] detention." 28 U.S.C. § 2243. In

3

response (Filing No. 41), the warden states he is holding Toalombo Yanchaliquin pursuant to a contract with the federal government and takes no position on the habeas petition.

The warden also dubiously contends that the immediate-physical-custodian rule articulated in *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) does not apply to "ICE alien detention cases." In support, he cites three district court cases. *See Pham v. Becerra*, 717 F. Supp. 3d 877, 881-82 (N.D. Cal. 2024); *Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d. 1136, 1141 (D. Colo. 2013); *Grant v. Decker*, No. 20 Civ. 2946, 2020 WL 3402445, at *3 (S.D.N.Y. June 19, 2020).[4]

Those district courts have concluded that footnote eight in *Padilla*, 542 U.S. at 435 n.8, creates an exception to the immediate-physical-custodian rule in immigrant-detention cases. But this Court is not persuaded. Footnote eight merely ponders that the Attorney General may be "a proper respondent to a habeas petition filed by an alien detained pending deportation" and then declines to resolve the issue. *Id*. It then cites six lower-court cases addressing the question of the proper respondent to an immigrant's habeas petition. *Id*. All those cases—except one which was later withdrawn—"held that the Attorney General was not a proper respondent." *Doe v. Garland*, 109 F.4th 1188, 1195 (9th Cir. 2024). And apart from the withdrawn case, all the lower-court cases "were challenges to removal/deportation orders and not to present physical confinement." *Id.* at 1195-96. Thus, it's far from clear that dicta in a footnote creates a broad exception that exempts the warden from his role as the immediate physical custodian. *See id.* at 1196 ("Footnote eight at most suggests that when an alien's habeas petition does not present a core habeas challenge under *Padilla*, the Attorney General may be a proper respondent."). And

---

[4]District-court orders, while they may be persuasive in certain circumstances, do not create any binding precedent. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 Moore's Federal Practice § 134.02[1][d] (3d ed. 2011)).

4

Toalombo Yanchaliquin's case presents a "core habeas challenge[] to present physical custody." *Padilla*, 542 U.S. at 444.

Despite the warden's half-hearted response, the federal respondents have also responded (Filing Nos. 36-38) and filed a notice of supplemental authority (Filing No. 44). Toalombo Yanchaliquin has replied (Filing No. 43). The petition is ready for decision.

**II.    DISCUSSION**

Toalombo Yanchaliquin argues he is unlawfully detained because his detention violates the text of the INA. At bottom, his petition turns on a question that dozens of other district courts have considered: whether, as a person who has been living in the United States unlawfully, his detention is mandatory under 8 U.S.C. § 1225(b)(2)(A) or discretionary under 8 U.S.C. § 1226(a). Under § 1225(b)(2)(A), detention pending removal proceedings is mandatory. By contrast, detention pending removal proceedings under § 1226(a) is discretionary and allows aliens detained thereunder the ability to request release on bond. *See* 8 C.F.R. § 1236.1(d)(1).

**A.    Standard of Review**

The habeas statute provides that a court shall grant the writ of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have jurisdiction to hear habeas corpus claims by aliens challenging the constitutionality of their detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003)). "Habeas has traditionally been a means to secure release from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).

**B.    Statutory Framework**

The central question in this case is which statutory provision Toalombo Yanchaliquin may be detained under. If § 1225(b)(2) covers Toalombo Yanchaliquin, then

his detention is mandated by statute. If § 1226(a) applies to his case, then he may be released on bond at the Attorney General's discretion.

The Supreme Court and the Eighth Circuit have not yet confronted a case that presents this question. District courts that have addressed it are split. *Compare Bernardo Aquino v. Larose*, No. 25-CV-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) ("The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen . . . who has resided in the United States for many years." (citing cases)), *with Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *7-8 (W.D. Okla. Dec. 26, 2025) (finding that "applicants for admission" are necessarily "seeking admission" and thus subject to mandatory detention under § 1225(a)).

As of this writing, two federal courts of appeals have considered the relationship between §§ 1225(b)(2) and 1226(a), one indicating it would agree with petitioners, and one agreeing with the government. *Compare Castañon-Nava v. D.H.S.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (motion panel) (concluding that the government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)), *with Buenrostro-Mendez v. Bondi*, Nos. 25-20496, 25-40701, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026) (finding the petitioner was subject to mandatory detention under § 1225(b)(2)). With that backdrop in mind, the Court will consider the provisions at issue.

In the case of an alien who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). Critically, under 8 C.F.R. § 1236.1(d)(1), "initial custody determination, including the setting of a bond," an alien detained under § 1226 may "request amelioration of the conditions under which he or she may be released" to an immigration judge.

6

Conversely, § 1225(b)(2)(A) requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). That language yields three requirements: The alien must be (1) "an applicant for admission," (2) an immigration officer must determine that the applicant "is not clearly and beyond a doubt entitled to be admitted," and (3) the applicant is "an alien seeking admission." *Id.*

"Applicant for admission" is a legal term of art defined by the statute. *See* 8 U.S.C. § 1225(a)(1). Under 8 U.S.C. § 1225(a)(1), "[a]n alien present in the United States who has not been admitted *or* who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission. *Id.* Thus, the term "applicant for admission" is somewhat of a legal fiction, covering both aliens who "arrive[] in the United States," including those who do not seek lawful admission at a port of entry, and those already "present in the United States who ha[ve] not been admitted." 8 U.S.C. § 1225(a)(1).

"The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Notably, even aliens who have been "paroled under section 1182(d)(5) of this title" are not considered to have been admitted. *Id.* § 1101(13)(B).

C.   **Statutory Interpretation**

In interpreting the meaning of a statute, the Court begins with the text itself. *See Union Pac. R.R. v. United States*, 865 F.3d 1045, 1048 (8th Cir. 2017). First, Toalombo Yanchaliquin is clearly an "applicant for admission." He did not gain lawful entry (i.e., "admission") into the country when he arrived in 2023. Instead, he entered the country without inspection and immigration officials deemed him inadmissible and placed him in removal proceedings. Thus, at the time of his 2025 re-arrest, Toalombo Yanchaliquin was

7

"present in the United States" and "ha[d] not been admitted," making him an applicant for admission.  8 U.S.C. § 1225(a)(1).

Second, immigration officers at Toalombo Yanchaliquin's initial and subsequent arrest have found that he "is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2).  Turning to the third piece of § 1225(b)(2), however, although Toalombo Yanchaliquin remained an applicant for admission who was not clearly entitled to be admitted, he was no longer "seeking admission" at the time of his 2025 re-arrest and detention.  Unlike "applicant for admission," and "admission," "seeking" has no statutory definition.  And at the time of his re-arrest, Toalombo Yanchaliquin was not actively seeking "lawful entry . . . into the United States."  8 U.S.C. § 1101(a)(13)(A).

Federal respondents disagree.  As they put it, "seeking" is a synonym to "applying" and an "applicant" is defined by Black's Law Dictionary as "one who requests something." In their view, an "applicant for admission" is synonymous with a person "seeking admission" because one cannot apply for something without also seeking it.  Under their interpretation of the statute, because Toalombo Yanchaliquin is an "applicant for admission," he is also "seeking admission."

The Court sees the appeal of federal respondents' argument, but ultimately the Court is more persuaded by Toalombo Yanchaliquin's argument that "seeking admission" refers to aliens who are actively seeking "lawful entry into the United States."  8 U.S.C. § 1101(a)(13).  *See also Castañon-Nava*, 161 F.4th at 1061 (pointing out that Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of applicants for admission] but elected not to do so").

Read together, the Court agrees with the vast majority of courts that have found that § 1225(b)(2) applies to a narrower subset of "applicants for admission" who are *presently* seeking lawful entry into the United States.  *See also Castañon-Nava*, 161 F.4th at 1061 (7th Cir. 2025) (agreeing with petitioners that "seeking admission" is not "synonymous

8

with" an "applicant for admission" and 1225(b) likely does not apply to applicants for admission within the country).

Moreover, Toalombo Yanchaliquin's immigration record supports that he is covered by § 1226(a). For example, his NTA charged him as removable because he is an alien *present in the United States* without being admitted or paroled—not an arriving alien. His December 2025 warrant states it is based, in part, on the immigration officer's authority under Section 236 of the INA, 8 U.S.C. § 1226. Regardless of what Toalombo Yanchaliquin's designation could have been upon entry, federal respondents treated him as someone already in the country pursuant to their discretionary authority under § 1226(a).

### D. Due Process Claim

The final claim in Toalombo Yanchaliquin's petition asserts his detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution because he has been denied a bond hearing to determine the justification of his continued detention under 8 U.S.C. § 1226(a)(2)(A). Maybe, maybe not. While the Court agrees § 1226(a)'s enacting regulations set out the procedure for requesting a bond hearing, "there is certainly reason to question whether [Toalombo Yanchaliquin] has a constitutional right to a bond hearing while removal proceedings are pending (at least in the absence of more prolonged detention than [Toalombo Yanchaliquin] has endured to this point)." *Suastegui Vega v. McAleenan*, No. 8:19-CV-189, 2019 WL 3219326, at *5 (D. Neb. July 17, 2019); *accord Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (explaining that the lower court erred in finding due process required additional procedural protections beyond the initial bond hearing established by 1226(a)'s regulations).

In sum, when ICE agents detained Toalombo Yanchaliquin in 2025 in Minneapolis, he was no longer seeking to enter the country in the literal sense. He was already here—and had been for years. Because the Court finds Toalombo Yanchaliquin falls under

§ 1226(a), just one issue[5] remains—the proper remedy. Toalombo Yanchaliquin seeks either his release from custody or an order directing the immigration court to give him a bond hearing. Only the latter is appropriate here. The unlawful aspect of Toalombo Yanchaliquin's detention is the fact that § 1226(a) permits the Attorney General to consider release on bond. That presumably allows Toalombo Yanchaliquin to ask for one. *See* C.F.R. §§ 236.1(d)(1) and 1236.1(d)(1). His detention itself, however, is discretionary. *See* § 1226(a). To remedy the unlawful aspect of Toalombo Yanchaliquin's detention, the Court will order that the federal respondents allow him to request a bond hearing pursuant to § 1226(a)'s regulations, 8 C.F.R. §§ 236.1(d)(1) and 1236.1(d)(1). Accordingly,

IT IS ORDERED:
1. Willian Patricio Toalombo Yanchaliquin's amended petition for a writ of habeas corpus (Filing No. 33) is granted in part and denied in part for the reasons explained in this Memorandum and Order.
2. The federal respondents shall provide Toalombo Yanchaliquin with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations within ten days of this Order.
3. If the federal respondents do not provide Toalombo Yanchaliquin with a bond hearing under 8 U.S.C. § 1226(a) as required by this Order, he must be immediately released from detention.
4. Within fourteen days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Toalombo Yanchaliquin's release.

---

[5]The Court denies Toalombo Yanchaliquin's informal request for attorney's fees and costs under the Equal Access to Justice Act (Filing No. 33). *See* 28 U.S.C. § 2412(d); 5 U.S.C. § 504. Given the circuit split, the Court cannot go so far as to say that the federal respondents' positions lacked a "reasonable basis in law and fact," particularly when they were made "in such an open area of the law[.]" *Bah v. Cangemi*, 548 F.3d 680, 683-84 (8th Cir. 2008).

Dated this 13th day of February 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

Dated this 13th day of February 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge